SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Scott Diana v. LVNV Funding, LLC (A-52-24) (089939)**

**Argued January 6, 2026 -- Decided July 8, 2026**

**JUSTICE HOFFMAN, writing for a unanimous Court.**

In this appeal, the Court considers whether plaintiff Scott Diana can assert a private right of action to void a loan contract, pursuant to the New Jersey Consumer Finance Licensing Act (CFLA), against institutional debt-buyer defendants that allegedly purchased his credit card debt without a requisite license.

After Diana defaulted on an outstanding balance on his credit card, the issuing company sold the outstanding debt to MHC Receivables, LLC (MHC). Later, the debt was assigned from MHC to FNBM, LLC to Sherman Originator III LLC to Sherman Originator LLC and, finally, to LVNV Funding LLC (LVNV) (collectively, defendants). At the time of these transactions, none of the defendants were licensed in New Jersey as consumer lenders or sales finance companies. Defendants were never investigated or prosecuted for any violation of the CFLA.

LVNV filed a complaint to collect on Diana's debt, and default judgment was entered against Diana. Diana then filed a separate suit on behalf of himself and a class of unidentified consumers whose debt was assigned to LVNV, alleging that defendants were not properly licensed to take assignment of consumer debt, as required by N.J.S.A. 17:11C-3, and that, therefore, their purchase was void under N.J.S.A. 17:11C-33(b). The trial court dismissed Diana's complaint with prejudice, reasoning that the CFLA does not confer a private right of action. Diana appealed.

During the pendency of his appeal, the Appellate Division decided Francavilla v. Absolute Resolutions VI, LLC, which held that the CFLA does not contain a private right of action. 478 N.J. Super. 171, 180 (App. Div. 2024). The Appellate Division in this case saw "no reason to depart from [its] conclusion in Francavilla" and affirmed. The Court granted certification. 260 N.J. 313 (2025).

**HELD:** The CFLA does not contain an implied private right of action for a borrower to void a loan contract.

1

1.  To determine if a statute confers an implied private right of action, New Jersey courts apply the factors established in Cort v. Ash, 422 U.S. 66, 78 (1975), and consider whether: (1) the plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy. New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action. (pp. 9-11)

2.  Under the CFLA, "[n]o person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." N.J.S.A. 17:11C-3(a). If a lender violates that provision "in the making or collection" of a loan, the loan contract "shall be void" and the lender "shall be guilty of a crime of the fourth degree." Id. at -33(b). (pp. 11-12)

3.  Here, the parties do not dispute that Diana meets the first Cort factor. Diana's ability to sue thus turns on whether Subsection 33(b) contains an implied private right of action to void a loan contract. However, Diana fails to meet the second and third Cort factors. Predecessor statutes to the CFLA contained provisions that expressly created a private right to recover from the lender. The criminal voiding provisions in the predecessor statutes -- like N.J.S.A. 17:11C-33(b) -- did not expressly authorize such recovery, and courts only ever recognized a private right to void a loan contract when exercised as part of the express private right to recover from the lender. The Legislature's decision not to include an express private recovery provision in the CFLA thus counsels firmly against finding legislative intent to confer an implied right of action to void a loan contract here. And there is no reason to infer a private right of action from historical use of the predecessor statutes' criminal voiding provision in civil litigation because it was only ever asserted as an affirmative defense, not a private right of action. (pp. 13-17)

4.  The Court's determination is reinforced by Subsection 33(b)'s statutory scheme. The Court notes the criminal consequences that Subsection 33(b) specifies and observes that its voiding provision is part of a broader penal scheme. New Jersey courts generally will not allow private plaintiffs to sue for injunctions to enforce penal laws. Absent a clarifying statement from the Legislature that a criminal statute confers a concurrent private right of action, the Court infers the underlying purpose of the legislative scheme to be the establishment of criminal penalties, not an implied private right of action to void a contract. (pp. 18-20)

 **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE HOFFMAN's opinion.**

2

SUPREME COURT OF NEW JERSEY
A-52 September Term 2024
089939

Scott Diana, on behalf of
himself and those similarly
situated,

Plaintiff-Appellant,

v.

LVNV Funding LLC,
MHC Receivables, LLC,
FNBM, LLC, Sherman
Originator III LLC, and
Sherman Originator LLC,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| January 6, 2026 | July 8, 2026 |

Yongmoon Kim argued the cause for appellant (Kim Law Firm, attorneys; Yongmoon Kim and Mark Jensen, on the briefs).

Nowell D. Bamberger of the District of Columbia and Maryland bars, admitted pro hac vice, argued the cause for respondents (J. Robbin Law, attorneys for respondents LVNV Funding LLC, Sherman Originator III LLC, and Sherman Originator LLC; and Foley & Lardner, and Cleary Gottlieb Steen & Hamilton, attorneys for respondents MHC Receivables, LLC, and

FNBM, LLC; Jacquelyn A. DiCicco, and Christopher A. DeGennaro, of counsel and on the joint briefs, and Nowell D. Bamberger, and Elsbeth Bennett of the District of Columbia and New York bars, admitted pro hac vice, on the joint briefs).

Bruce D. Greenberg argued the cause for amici curiae Consumers League of New Jersey and National Association of Consumer Attorneys (Lite DePalma Greenberg & Afanador, attorneys; Bruce D. Greenberg, on the brief).

David McMillin argued the cause for amicus curiae Legal Services of New Jersey (Legal Services of New Jersey, attorneys; David McMillin, Dawn K. Miller, and Dhairya Bhatia, on the brief).

JUSTICE HOFFMAN delivered the opinion of the Court.

In this appeal, the Court considers whether plaintiff Scott Diana can assert a private right of action to void a loan contract, pursuant to the New Jersey Consumer Finance Licensing Act (CFLA), N.J.S.A. 17:11C-1 to -49, against institutional debt-buyer defendants that allegedly purchased his credit card debt without a requisite license. Like the trial and appellate courts, we hold that the CFLA does not contain an implied private right of action for a borrower to void a loan contract.

2

I.

A.

In May 2015, Diana opened a credit card account with Credit One Bank, N.A. (Credit One). By the end of the year, Diana had defaulted on his outstanding balance of $618.91. After another half-year of nonpayment, Credit One closed Diana's credit card account and sold the outstanding debt to defendant MHC Receivables, LLC (MHC). Later, in a series of transactions, the debt was assigned from MHC to FNBM, LLC to Sherman Originator III LLC to Sherman Originator LLC and, finally, to LVNV Funding LLC (LVNV) (collectively, defendants). At the time of these intercorporate transactions, none of the defendants were licensed in New Jersey as consumer lenders or sales finance companies.[1] Defendants were never investigated or prosecuted for any violation of the CFLA.

B.

On January 3, 2017, LVNV filed a complaint in the Bergen County Special Civil Part to collect on Diana's unpaid debt. On April 20, 2017, after

---

[1] Defendants "emphatically" contest the assertion that, as purchasers of consumer debt, "they required a license." Because this issue was never raised before us, we do not reach it.

Diana failed to answer the complaint, the court entered final default judgment in favor of LVNV for $703.29, which included court costs and attorney's fees.

On January 3, 2023, Diana filed suit against defendants; that suit was subsequently transferred to the Superior Court, Law Division. Diana sued defendants on behalf of himself and a class of unidentified New Jersey consumers "listed as the borrower or purchaser in an account assigned from an unlicensed entity to LVNV." Diana alleged that defendants "were not properly licensed as . . . consumer lender[s] or sales finance compan[ies] to lawfully take assignment" of consumer debt, as required by N.J.S.A. 17:11C-3, and that, therefore, their "purchase was void as a matter of law" under N.J.S.A. 17:11C-33(b).

Relevant to the claims before the Court, Diana requested a declaratory judgment voiding the loan contract and an injunction against future attempts to collect his outstanding balance. Defendants moved to dismiss Diana's complaint, arguing that the CFLA does not confer a private right of action to void loan contracts.

The same day defendants filed their motion to dismiss in the Law Division, Diana moved before the Special Civil Part to vacate its April 20, 2017 default judgment. The court denied Diana's motion without prejudice.

Diana then moved in the Law Division to oppose defendants' motion to dismiss and cross-moved to transfer, consolidate, and vacate the default judgment entered against him by the Special Civil Part. On October 20, 2023, the Law Division dismissed Diana's complaint with prejudice and denied his cross-motion. The Law Division reasoned that Diana could not sue to void his loan contract because the CFLA "does not confer [a] private statutory cause of action," as "[o]nly the Commissioner of Banking and Insurance has authority to pursue claims for violations."

C.

Diana thereafter filed a notice of appeal. During the pendency of his appeal, the Appellate Division decided Francavilla v. Absolute Resolutions VI, LLC, 478 N.J. Super. 171 (App. Div. 2024). In Francavilla, the plaintiff, like Diana, alleged that the defendants "unlawfully purchased consumers' debt without first obtaining a business license . . . as required by the [CFLA]" and likewise sought to void her outstanding credit card debt and vacate a default judgment against her. Id. at 176. Relying on Finch v. LVNV Funding LLC, 71 A.3d 193 (Md. Ct. Spec. App. 2013), the plaintiff maintained that the CFLA contained a private right of action. Francavilla, 478 N.J. Super. at 180. The Appellate Division in Francavilla disagreed, stating that Finch was based

5

in part on the Maryland Consumer Debt Collection Act, which "contains a private right of action, while New Jersey's CFLA does not." Ibid.

On September 26, 2024, the Appellate Division affirmed the Law Division's orders in the present case dismissing Diana's complaint and denying his cross-motion, finding "no reason to depart from [its] conclusion in Francavilla." The appellate court reasoned that Diana could not sue to void his loan contract because the CFLA contains "no legislatively[] crafted private right of action" but instead specifies that "a 'consumer lender' who violate[s] the licensing provision of the CFLA [will] 'be guilty of a crime of the fourth degree.'" (quoting N.J.S.A. 17:11C-33(b)).

D.

This Court subsequently granted Diana's petition for certification, limited to whether the CFLA provides a private right of action. 260 N.J. 313 (2025). We also granted leave to appear as amici curiae to Consumers League of New Jersey and National Association of Consumer Attorneys, which participated jointly, as well as Legal Services of New Jersey.

II.

A.

Diana requests that this Court reverse the Appellate Division and argues that he can sue to affirmatively void his loan contract because Subsection

6

33(b) "provides that a consumer account acquired by an entity who is not licensed under the Act 'shall be void.'"  (quoting N.J.S.A. 17:11C-33(b)). Although Diana concedes that the CFLA's voiding provision does not expressly permit private enforcement, he asserts that an implied right of action would be consistent with the Small Loan Law of 1914 (SLL), the Small Loan Act of 1932 (SLA), and the Consumer Loan Act of 1989 (CLA) -- predecessors to the CFLA -- each of which had allowed borrowers to void violative loan contracts and to "recover from the lender any or all sums paid . . . in connection with such loan."[2]  (citing L. 1914, c. 49, § 6; L. 1932, c. 62, § 13; L. 1989, c. 38, § 8).

---

[2]     Diana also points to a separate provision in Subsection 33(b) of the CFLA which mandates that "a consumer lender who knowingly and willfully violates any provision of this act shall also forfeit to the borrower three times any amount of the interest, costs or other charges collected in excess of that authorized by law."  In Lemelledo v. Beneficial Management Corp. of America, this Court described identical language in the CFLA's immediate predecessor, the Licensed Lenders Act (LLA), L. 1996, c. 157, as "allow[ing] for treble damages by aggrieved consumers."  150 N.J. 255, 272 (1997) (citing N.J.S.A. 17:11C-33(b) (1997)).  Diana contends that, because Subsection 33(b) "confer[s] a private right of action" for treble damages, the Legislature must have also intended private enforcement of the voiding provision within that subsection.

However, Diana does not allege any excess interest, costs, or other charges in this case, nor does he seek treble damages.  This language is therefore not relevant to his claim.  In addition, the LLA took effect two days before Lemelledo was decided and was not at issue in that case; instead, the

7

Amici Consumers League of New Jersey (CLNJ) and National Association of Consumer Attorneys (NACA) jointly support Diana's position that the CFLA recognizes a private right to void a loan contract. CLNJ and NACA contend that private enforcement would further the CFLA's purpose to "protect consumers from the predations of unlicensed, unregulated sellers or other market participants."

Amicus Legal Services of New Jersey (LSNJ) likewise argues in support of Diana's position that the CFLA's voiding provision contains an implied private right of action. LSNJ contends that Diana's debt resulted from use of a "predatory fee-harvester card" that charges excessively high fees and disproportionately hurts low-income and minority consumers. LSNJ argues that private enforcement of Subsection 33(b) would help curb such abuse.

B.

Defendants request that this Court affirm the Appellate Division and argue that no implied private right of action exists under the CFLA. Defendants contend that the Legislature's removal of the SLL, SLA, and CLA's language permitting aggrieved borrowers to "recover from the lender

---

"sole inquiry" in Lemelledo was whether the Consumer Fraud Act applied to alleged loan packing. Id. at 263. Lemelledo's statement that the LLA conferred a private right of action for treble damages was therefore dictum.

8

any such sums paid . . . in connection with [a violative] loan" evidences a clear intent to remove any private right of action from the CFLA's immediate predecessor, the Licensed Lenders Act (LLA), and thus the CFLA itself. Defendants further argue that the voiding provision cannot be understood to create a private right of action because it is a "criminal provision otherwise enforceable only by the State."

III.

A.

When interpreting a statute, our review is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 181 (2024). We begin by looking to the statute's plain language, State v. A.M., 252 N.J. 432, 450 (2023), and "presume that the Legislature intended the words that it chose and the plain and ordinary meaning ascribed to those words," Paff v. Galloway Township, 229 N.J. 340, 353 (2017); see also N.J.S.A. 1:1-1. "The best indicator of legislative intent is typically the plain language of the statute." Savage v. Township of Neptune, 257 N.J. 204, 215 (2024) (quotation omitted).

Where a statute's text does not expressly permit private enforcement, "[t]he judicial task is to interpret the statute [the Legislature] has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Alexander v. Sandoval, 532 U.S. 275, 286 (2001).

9

"Statutory intent on this latter point is determinative" because, without such intent, "a cause of action does not exist and courts may not create one." Id. at 286-87.

"To determine if a statute confers an implied private right of action," New Jersey courts, like federal courts, consider whether: (1) the "plaintiff is a member of the class for whose special benefit the statute was enacted"; (2) there is "evidence that the Legislature intended to create a private right of action under the statute"; and (3) "it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy."[3] R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 272 (2001) (citing Cort v. Ash, 422 U.S. 66, 78 (1975)). "Although courts give varying weight to each one of those factors, 'the primary goal has almost invariably been a search for the underlying legislative intent.'" Id. at 272-73 (quoting Jalowiecki v. Leuc, 182 N.J. Super. 22, 30 (App. Div. 1981)).

---

[3] Conversely, "[w]hen [the Legislature] acts in a statutory context in which an implied private remedy has already been recognized by the courts . . . . the question is whether [the Legislature] intended to preserve the pre-existing remedy." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 378-79 (1982). As our analysis below makes clear, however, New Jersey courts have never recognized an independent implied private right of action to void loan contracts within the CFLA or its predecessor statutes.

While courts were once "'alert to provide [private] remedies,'" they have since "abandoned that understanding" and "[h]av[e] sworn off the habit of venturing beyond [the Legislature's] intent." Sandoval, 532 U.S. at 287 (quoting J.I. Case Co. v. Borak, 377 U.S. 426, 433 (1964)). "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." R.J. Gaydos, 168 N.J. at 271.

B.

Under the CFLA, "[n]o person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." N.J.S.A. 17:11C-3(a). If a lender violates that provision "in the making or collection" of a loan, the loan contract "shall be void." Id. at -33(b). The relevant portion of Subsection 33(b) states:

> A consumer lender who violates or participates in the violation of any provision of section 3, 19, 21, 34, 35 or 36, or subsection a. of section 10, or subsection a., b., or c. of section 32, or subsection a. of this section, or subsection e., f., g., or h. of section 41 of this act, shall be guilty of a crime of the fourth degree. A contract of a loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes a crime of the fourth degree under this section, shall be void and the lender shall have no right to collect or receive any principal, interest or charges . . . . If any interest, consideration or charges in excess of those permitted are charged, contracted for or received, except as the result of a good

11

faith error, the consumer lender may collect only the principal amount of the loan, and may not collect interest, costs or other charges with respect to the loan. In addition, a consumer lender who knowingly and willfully violates any provision of this act shall also forfeit to the borrower three times any amount of the interest, costs or other charges collected in excess of that authorized by law.

[(emphases added).]

## IV.

Diana's ability to sue in this case turns on whether Subsection 33(b) contains an implied private right of action to void a loan contract. In assessing whether such an implied private right of action exists, we apply the factors established by the United States Supreme Court in Cort, 422 U.S. at 78, and adopted by this Court in In re Resolution of State Commission of Investigation, 108 N.J. 35, 41 (1987). The parties do not dispute that, as "a member of the class for whose special benefit the [CFLA] was enacted," Diana meets the first Cort factor. R.J. Gaydos, 168 N.J. at 272.

We find, however, that Diana fails to meet the second and third Cort factors. The history of the CFLA and its predecessor statutes offers no "evidence that the Legislature intended to create a private right of action" to void loan contracts. Ibid. An implied right of action would likewise be "[in]consistent with" the broader penal scheme in which Subsection 33(b)'s voiding provision is situated. Ibid.

12

A.

Based on the history of the CFLA and its predecessor statutes, we see no legislative intent to create a private right of action to void violative loan contracts. Diana asserts that such an implied private right would be consistent with the SLL, SLA, and CLA. However, those laws have never contained an independent private right to void loan contracts. Rather, the ability to affirmatively void a loan contract has always been dependent upon an express private right of action to "recover from the lender" -- a right that the Legislature pointedly omitted from the LLA and CFLA.

In 1914, the Legislature enacted the Small Loan Law, New Jersey's first comprehensive licensing scheme for small loan lenders. L. 1914, c. 49; see generally David J. Gallert et al., Small Loan Legislation 18-72 (1932), available at https://www.russellsage.org/sites/default/files/Small-Loan-Legislation.pdf. The SLL mandated that any lender "in the business of loaning money in sums of three hundred dollars or less amounts shall procure a license."[4] L. 1914, c. 49, § 1. The SLL further provided: "The violation of any provision of this act shall be a misdemeanor . . . . Every loan in

_____

[4] The Legislature has increased the applicable dollar amount several times since the SLL's enactment. Today, the CFLA covers "loan[s] of $50,000 or less." N.J.S.A. 17:11C-2.

13

connection with such violation . . . shall be absolutely null and void, and the borrower shall be entitled to recover from the lender any or all sums paid . . . in connection with such loan."  Id. at § 6 (emphasis added).

In 1932, the Small Loan Act repealed and replaced the SLL.  L. 1932, c. 62 (codified at N.J.S.A. 17:10-1 to -26).  The Legislature would amend the SLA several times in the decades following its enactment, eventually changing its name to the "Consumer Loan Act" in 1989.  L. 1989, c. 38, § 1.  Rather than provide a uniform penalty for any violation of the acts, the SLA and CLA attached specific consequences to specific violations.

Under N.J.S.A. 17:10-14 (the express recovery provision), if the lender had charged "any interest, consideration or charges in excess of those permitted by this chapter . . . the contract of loan [would] be void and . . . the borrower [would] be entitled to recover from the lender any such sums paid . . . in connection with the loan."  (emphasis added).  The Legislature ultimately removed this express recovery provision when enacting the LLA and CFLA.

In contrast, N.J.S.A. 17:10-21 (the criminal voiding provision) did not expressly authorize recovery from the lender.  Rather, it provided that any lender who violated certain enumerated provisions -- including the SLA/CLA's licensing provision -- would be "guilty of a misdemeanor" and that "[a]

14

contract . . . in the making or collection of which any act shall have been done which constitutes a misdemeanor under this section, shall be void." Ibid. The Legislature kept that provision nearly verbatim when enacting the 1997 (LLA) and 2010 (CFLA) versions of N.J.S.A. 17:11C-33(b), merely updating the enumerated provisions and changing the criminal penalty from a misdemeanor to a crime of the fourth degree.

Diana fails to differentiate between the ability to void a loan contract and the right to "recover from the lender any such sums paid." N.J.S.A. 17:10-14. Voiding a loan contract means "that a lender cannot recover on an obligation which does not comply with [the relevant] provisions of that statute" but may keep any sums already paid. Connell v. Am. Funding Ltd., 231 N.J. Super. 409, 420 (Ch. Div. 1987), aff'd, 231 N.J. Super. 202 (App. Div. 1989). By contrast, the ability to "recover all payments made to the lender" is "an additional remedy," id. at 421, which "permits the borrower to recover back at any time what he has paid for either principal or interest, leaving the lender shorn of all," Richmond v. Conservative Credit Sys. of N.J., 110 N.J.L. 73, 74 (E. & A. 1933).

Under the SLL, SLA, and CLA, New Jersey courts only ever recognized a private right to void a loan contract when exercised as part of the express private right to "recover from the lender." E.g., Langer v. Morris Plan Corp.

of N.J., 110 N.J.L. 186, 188 (E. & A. 1933) (affirming that "the note in question was in violation of section 5 of [the SLL], and that under section 6 of the act the borrower was entitled to have back any moneys paid on such loan"); Howard v. Confidential Loan Plan, 125 N.J.L. 74 (Sup. Ct. 1940) (noting that the plaintiff "brought this action under the admirable provisions of N.J.S.A. 17:10-14" and affirming her recovery of "the full amount paid" to the defendant lender). The Legislature's removal of the SLA and CLA's express recovery provision does not support -- but rather counsels firmly against -- finding legislative intent to confer an implied private right of action to void a loan contract here.

Diana does not cite any case in which a borrower asserted an independent private right to void a loan contract. The SLA and CLA's criminal voiding provision, the precursor to Subsection 33(b)'s voiding provision, was only ever asserted in civil litigation as an affirmative defense, not a private right of action. See, e.g., First Indus. Loan Co. of N.J. v. Rosenhand, 115 N.J.L. 252 (E. & A. 1935); Trs. Sys. Co. of Newark v. Stoll, 13 N.J. Misc. 490 (Sup. Ct. 1935); Indep. Loan Co. v. Tyson, 117 N.J.L. 259, 259 (Sup. Ct. 1936), aff'd, 120 N.J.L. 184 (E. & A. 1938).

There is no reason to infer a private right of action from the criminal voiding provision's historical use as an affirmative defense. In assessing an

16

analogous voiding provision under the National Labor Relations Act, 29 U.S.C. § 158(e), the U.S. Supreme Court has observed that "[r]efusing to enforce a promise that is illegal . . . is not providing an additional remedy contrary to the will of [the Legislature]. A defendant proffering the defense seeks only to be relieved of an illegal obligation and does not ask any affirmative remedy." Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 82 n.7 (1982); see also Costello v. Grundon, 651 F.3d 614, 624 (7th Cir. 2011) (evaluating a voiding provision within the Securities Exchange Act, 15 U.S.C. § 78cc(b), and holding that "[n]o private right of action under a statute is necessary to assert a violation of that statute as an affirmative defense").[5] The Legislature's decision to maintain only the SLA and CLA's criminal voiding provision within the LLA and CLA thus provides no "evidence that the Legislature intended to create a private right of action" to void loan contracts. R.J. Gaydos, 168 N.J. at 272.

---

[5] New Jersey courts have similarly held "that public policy precludes enforcement of a contract entered into in violation of [a] licensing statute" and "a failure to comply with [an] Act's licensing requirements would ordinarily serve as a bar to enforcing a contract" and have therefore permitted voiding a contract when raised as an affirmative defense, without discussing or creating an implied private right of action. See, e.g., Accountemps Div. of Robert Half of Phila., Inc. v. Birch Tree Grp., Ltd., 115 N.J. 614, 626 (1989).

Our determination that there is no implied private right of action to void violative loan contracts is reinforced by Subsection 33(b)'s statutory scheme. The first sentence of Subsection 33(b) states that "[a] consumer lender who violates . . . section 3 . . . shall be guilty of a crime of the fourth degree." N.J.S.A. 17:11C-33(b). The second sentence states that "[a] contract of a loan . . . in the making or collection of which any act shall have been done which constitutes a crime of the fourth degree under this section, shall be void." Ibid. (emphasis added). The phrase "constitutes a crime" -- far from conveying an intent to create a private right of action -- is instead most commonly used by the Legislature in defining the degrees of a crime and, thus, the appropriate penalty for such conduct. See, e.g., N.J.S.A. 5:12-113(c)(1) ("Swindling and cheating constitutes a crime of the second degree if the amount involved is $75,000 or more."); N.J.S.A. 2C:27-12(a)(1) ("[C]orruption of public resources constitutes a crime of the first degree if the amount . . . involved is $500,000 or more . . . ."); N.J.S.A. 2C:20-2(b)(1) (providing that "[t]heft constitutes a crime of the second degree if" any of the listed conditions are met). Read in context, Subsection 33(b)'s voiding provision is therefore part of a broader penal scheme. See N.J.S.A. 1:1-1 ("In

18

the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context . . . .").

We have previously observed that "New Jersey courts generally will not allow private plaintiffs to sue for injunctions to enforce the state penal laws. Violations of these laws 'are left to the agencies charged with the enforcement of the criminal laws.'" In re Resolution, 108 N.J. at 41 (citations omitted) (quoting Trisolini v. Meltsner, 23 N.J. Super. 204, 209 (App. Div. 1952)). We see no reason to disturb this principle.

Moreover, because courts have become less eager to effectuate private enforcement of statutes where the Legislature has not so provided, see Sandoval, 532 U.S. at 287, we typically rely on the Legislature to clarify that a criminal statute confers a concurrent private right of action, see, e.g., N.J.S.A. 2C:13-8.1(a) ("Any person injured . . . as a result of the commission of a human trafficking offense . . . may bring a civil action in any court of competent jurisdiction . . . ."); N.J.S.A. 2C:21-22a(a) ("Any person who suffers any ascertainable loss . . . as a result of . . . the unauthorized practice of law . . . may bring a civil action in any court of competent jurisdiction."); N.J.S.A. 2C:41-4(c); N.J.S.A. 2C:21-17.8(f); N.J.S.A. 2C:21-31.1(a). Absent such a clarifying statement here, we infer the "underlying purpose[] of the

legislative scheme" to be the establishment of criminal penalties, not an implied private right of action to void a contract. R.J. Gaydos, 168 N.J. at 272.

## V.

Guided by the history and plain language of N.J.S.A. 17:11C-33(b), we conclude that Diana fails to satisfy the second and third Cort factors. There is no "evidence that the Legislature intended to create a private right of action" for a borrower to sue to void a loan contract, nor is it "consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." R.J. Gaydos, 168 N.J. at 272. Accordingly, we find that Diana cannot bring this suit to void his loan contract.[6]

We affirm the judgment of the Appellate Division.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE HOFFMAN's opinion.

---

[6] Because this issue is dispositive, we do not reach the question of whether other provisions of the CFLA permit private enforcement.

20